UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENYA BROWN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:17cv1328 (SRU) |
| | : | |
| SCOTT SEMPLE, et al., | : | |
| Defendants. | : | |

**INITIAL REVIEW ORDER**

The plaintiff, Kenya Brown ("Brown"), incarcerated and *pro se*, has filed a complaint

pursuant to 42 U.S.C. § 1983 against Department of Correction ("DOC") Commissioner Scott

Semple, Dr. Elizabeth Coursen, Dr. Paul Chaplin, Dr. Berger, Nurse Jane Ventrella, "C.S.W."

Matthew Green, Deputy Warden Jeffery Zegerzewski, Counselor Michelle King, Lieutenant

Paulsinski, Warden Antonio Santiago, Dr. Joslyn Cruz, Dr. Henry Crabb, and Nurse Nicole

Karabestos for violating his rights under the First Amendment, Eighth Amendment, and the

Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. §§ 15601-15609.  Brown is suing all

defendants in their individual capacities except Semple, who is being sued in his official

capacity.  Brown seeks declaratory, injunctive, and monetary relief.  On August 17, 2017,

Magistrate Judge William I. Garfinkel, granted Brown's motion to proceed *in forma pauperis*.

For the following reasons, I dismiss the complaint in part.

I.  Standard of Review

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil

complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to

state a claim upon which relief may be granted, or that seeks monetary relief from a defendant

who is immune from such relief.  28 U.S.C. § 1915A(b).  Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II. Factual Allegations

The complaint sets forth the following allegations. In 2014, while incarcerated at Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut, Brown was assigned to mental health treatment and therapy with Dr. Coursen. Over the course of the next two years, Coursen drugged and sexually abused Brown during their scheduled appointments. During the first few sessions, she told Brown that she wanted to end each session on "good terms" by hugging Brown and kissing him on the cheek. Coursen also gave Brown literature to read on Sigmund Freud and other materials discussing repressed sexuality. Over time, her behavior progressed to making sexual advances on Brown and, eventually, sexual assault. In December 2014, Coursen felt Brown's penis and performed oral sex on him.

In January 2015, after engaging in oral sex with Coursen for the third time, Brown refused treatment, which prompted Coursen to write letters to Brown, suggesting that he "lacked

consideration for her circumstance, and need not be jealous or upset." She also wrote that Brown "had no right to judge her" because of rumors that she was having extra-marital affairs. Brown did not respond to her letters.

In February 2015, Brown saw Coursen again and was "manipulated into [partaking] in vaginal sex by way of penetration." After acknowledging that Brown was uncomfortable performing sexual acts with her, Coursen suggested that Brown undergo hypnosis. She also presented gifts to Brown and often had him ingest Klonopin, which she told him would help him "take the edge off" so that he could better perform intercourse. After engaging in sexual intercourse, Coursen often threatened Brown. She told him that her boyfriend was a correction officer and would harm him if he told anyone about their sexual encounters.

Over time, Zegerzewski, Chaplin, Santiago, Berger, Green, and King learned about Coursen's behavior but failed to report or discipline her. Green and King specifically received complaints about Coursen's sexual misconduct and use of drugs but failed to report their findings to the proper authorities. On more than one occasion, King witnessed Brown and Coursen seated in the dark in Coursen's office. During those times, Coursen would conduct therapeutic hypnosis and make sexual gestures. Lieutenant Paulsinski also learned of Coursen's behavior but failed to report it. Eventually, Green complained about what he had learned to Coursen's supervisor, Dr. Crabb. However, Crabb refused to report Coursen or take any steps to protect Brown or any other inmates from her behavior. The failure of Crabb, Zegerzewski, Chaplin, Santiago, Berger, Green, King, and Paulsinski to report or take any preventative measures in response to Coursen's behavior enabled Coursen to continue sexually abusing Brown.

3

Brown often tried to avoid his therapy sessions with Coursen. He also submitted complaints to Chaplin about her behavior well into 2016, but Chaplin took no action to help Brown and, often times, engaged in actions "to deter" Brown's efforts to file said complaints. When Brown continued to file complaints, Nurses Ventrella and Karabestos "conspired with" Chaplin and Berger to deter his efforts by taking possession of his written complaints, thereby preventing them from being addressed.

After learning that Brown had sought redress for his problems with Coursen, Chaplin, Berger, and Dr. Cruz assigned him to Dr. Mark Frane, another psychologist with whom Brown had a conflict of interest. Chaplin, Cruz, and Berger knew that Frane had been "indifferent to inmates." Chaplin's, Cruz's, and Berger's "deliberate indifferen[ce] to [Brown's] psychological needs . . . caused [him] to suffer a sever[e] addiction to Klonopin, and mental anguish."

III. Analysis

Brown has raised multiple counts of constitutional and statutory violations against the thirteen named defendants, many of which overlap. I will address each of his claims separately.

A.      Eighth Amendment Sexual Abuse

Brown first claims that Coursen sexually abused him, in violation of his Eighth Amendment protection against cruel and unusual punishment. "The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). To state an Eighth Amendment claim, a prisoner must allege that the defendants acted with "a subjectively sufficiently culpable state of mind" and "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Id.* (internal quotation marks omitted).

An inmate's allegations of sexual abuse against prison officials are cognizable as Eighth Amendment claims. *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997). Such abuse "may violate contemporary standards of decency and . . . cause severe physical and psychological harm." *Id.* "In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford*, 796 F.3d at 257-58.

In this case, Brown alleges that Coursen repeatedly subjected him to inappropriate touching, oral sex, and vaginal sex during their mental health therapy sessions. She also allegedly drugged Brown and subjected him to hypnosis to facilitate his compliance with the sexual activities. These allegations sufficiently state an Eighth Amendment claim against Coursen for sexual abuse.

B.      Violation of PREA

Brown also claims that Coursen violated PREA by sexually assaulting him on numerous occasions from 2014 to 2016. However, "PREA does not create a private right of action for inmates . . . ." *White v. Doe*, 16 Civ. 1874 (JAM), 2017 WL 2562845, *5 (Jun. 13, 2017). Therefore, Brown's PREA violation claim is DISMISSED.

C.      Sexual Assault

Brown also appears to be raising a state law claim of sexual assault against Coursen. He states that Coursen's sexual misconduct violated CONN. GEN. STAT. § 53a-73a. Although § 53a-73a is a criminal statute, and Brown cannot bring a criminal action against Coursen, I will construe his claim as one of civil assault under Connecticut law.

I can exercise supplemental jurisdiction over a state law claim if:

(1) there is a claim arising under the constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds, Graham v. Connor*, 490 U.S. 386 (1989).

Here, Brown's sexual assault claim is grounded in the same set of facts as his Eighth Amendment sexual abuse claim. Both claims are against Coursen in her individual capacity, and I have already concluded that Brown has alleged sufficient facts to state a claim for Eighth Amendment sexual abuse. Thus, I will permit Brown's state law assault claim against Coursen to proceed at this time.

        D.      <u>Failure to Protect</u>

Brown claims that Zegerzewski, Santiago, Chaplin, Berger, Paulsinski, Ventrella, Green, King, Crabb, Cruz, Karabestos and Semple are liable for Coursen's abusive behavior against him and alleges multiple claims to that effect. Brown claims that Zegerzewski, Santiago, Chaplin, Berger, Paulsinski, Ventrella, Green, King, Crabb, Cruz and Karabestos failed to report Coursen's behavior after learning about it. He claims that Zegerzewski, Santiago, Chaplin and Berger failed to warn Brown of Coursen's propensities. He further claims that Zegerzewski, Santiago, Chaplin, Berger and Paulsinski failed to (1) supervise Coursen and other correction staff to prevent such behavior, (2) enforce protocol to prevent the abuse, and (3) train correctional staff on how to respond to sexual abuse complaints, a claim he alleges against

6

Semple as well. I construe these allegations collectively as a claim that these defendants failed to protect Brown from harm, in violation of the Eighth Amendment.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). This principle applies to claims that prison officials failed to protect an inmate from sexual abuse. *See Doe v. Whidden*, 557 F. App'x 71 (2d Cir. 2014); *Johnson v. Meachum*, 839 F. Supp. 953, 956-58 (D. Conn. 1993) (denying motion to dismiss claim that prison official failed to protect inmate from sexual abuse by another inmate).

A prison official violates a prisoner's Eighth Amendment right to protection against cruel and unusual punishment only when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). First, Brown must prove that the deprivation was "objectively, sufficiently serious . . . ." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the claim is based on the defendants' failure to prevent harm, Brown also must prove that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*

To determine whether the prisoner faced a substantial risk of serious harm, I must consider "the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotations and citation omitted). Secondly, Brown must prove that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03). The prison official must have known of and disregarded an excessive risk to Brown's health or safety. *See id.* at 837.

In this case, Brown alleges that Zegerzewski, Santiago, Chaplin, Berger, Paulsinski, Green, King, and Crabb all learned of Coursen's behavior but failed to report it or take any measures to prevent her from assaulting Brown. Green and King specifically learned about Coursen's use of drugs to facilitate her attempts to assault Brown. At one point, King witnessed Brown and Coursen alone in the dark in Coursen's office. When Green finally decided to report the behavior to Crabb, Crabb did not take any remedial action. Construed liberally, these allegations state an Eighth Amendment claim for failure to protect Brown from sexual abuse against Zegerzewski, Santiago, Chaplin, Berger, Paulsinski, Green, King and Crabb.

Brown has not, however, sufficiently stated a failure to protect claim against Semple, Ventrella, Cruz, or Karabestos. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under section 1983). A prisoner who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of four ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; or (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). "In addition, supervisory liability may be imposed where an official demonstrates gross negligence or deliberate indifference to the constitutional

8

rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." *Wright*, 21 F.3d at 501 (internal quotation marks omitted). The prisoner must also allege a causal link between the conduct of the supervisory official, or lack thereof, and the injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Here, Brown stated in his complaint that he is suing Semple in his official capacity. Compl. at 1. It cannot be inferred from the complaint that Semple was even aware of Coursen's behavior. Thus, if Brown is also attempting to sue Semple in his individual capacity, that claim is DISMISSED. Brown has also not sufficiently alleged that Ventrella, Cruz, or Karabestos were aware of the sexual abuse. Therefore, Brown's failure to protect claim may only proceed against Zegerzewski, Santiago, Chaplin, Berger, Paulsinski, Green, King, and Crabb in their individual capacities.

E.      Deliberate Indifference to Medical Needs

Brown claims that Berger, Chaplin, and Cruz "collectively conspired . . . to ban [him] from therapy to make him whole again, [and/or] entertain the full nature of his claims against . . . Coursen." Compl. 17. He alleges that, after complaining about Coursen, these three defendants assigned him to Dr. Frane, whom they knew to be deliberately indifferent to inmates' medical needs. This allegedly caused Brown to become addicted to Klonopin and suffer mental anguish. It appears from these allegations that Brown is attempting to state a claim for deliberate indifference to his serious medical needs.

Deliberate indifference to a serious medical need occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137-38 (2d Cir. 1998)

9

(citing *Farmer*, 511 U.S. at 837).  In order to prevail on his deliberate indifference claim, Brown

must show both that his medical need was serious and that the defendants acted with a

sufficiently culpable state of mind.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003)

(citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)).  There are both objective and subjective

components to the deliberate indifference standard.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66

(2d Cir. 1994).  Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson v.

Seiter*, 501 U.S. 294, 298 (1991).  The condition must be "one that may produce death,

degeneration, or extreme pain."  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)

(internal quotation marks omitted).  Subjectively, the defendants must have been actually aware

of a substantial risk that Brown would suffer serious harm as a result of their conduct.  *See

Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

Even liberally construed, Brown's factual allegations are insufficient to state a claim of

deliberate indifference to medical needs against Berger, Chaplin, or Cruz.  Brown merely makes

the conclusory assertion that Dr. Frane is deliberately indifferent to the medical needs of all

inmates and, therefore, alleges that the defendants' decision to assign him to Dr. Frane

constituted deliberate indifference to medical needs.  Moreover, it is not clear from the complaint

that Brown suffers from a "sufficiently serious" medical condition.  Therefore, his deliberate

indifference to medical needs claim is DISMISSED.

      F.      First Amendment Retaliation

Brown claims that Chaplin, Berger, Ventrella, Cruz, and Karabestos violated his First

Amendment right to free speech by confiscating his written complaints about Coursen and

denying or "tampering with" his mental health treatment after he filed those complaints.

To establish a First Amendment retaliation claim, Brown must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted). Brown "bears the burden of showing that the protected conduct was a substantial or motivating factor in the prison officials' disciplinary decision." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted).

Liberally construed, Brown has stated a plausible First Amendment retaliation claim against Chaplin, Berger, Ventrella, Cruz, and Karabestos. He alleged that he had filed several grievances in response to Coursen's inappropriate treatment of him, which is certainly constitutionally protected activity. *See Zigmund v. Foster*, 106 F. Supp. 2d 352, 363 (D. Conn. 2000) ("The First Amendment protects an inmate from retaliation for exercising his right to seek redress through the prison grievance process or the courts"). His allegation that Chaplin, Berger, Ventrella, Cruz, and Karabestos confiscated his grievances and prevented them from being addressed could be construed as adverse action taken in response to, and as a result of, Brown's attempt to raise complaints about Coursen. I will, therefore, permit Brown's First Amendment claim to proceed against those five defendants.

G.     Claims Against Semple in his Official Capacity

Brown is suing Commissioner Semple in his official capacity because his "lax[] polic[ies] and customs allow correction staff and Correctional Managed Health Care to prejudicially cho[o]se when to report rape" and caused Brown to sustain mental anguish and retaliation from other correction officials. He also claims that DOC Administrative Directive 6.12, which he

11

imputes to Semple, is unconstitutionally "vague" because it does not (1) mandate punishment against staff who retaliate against inmates seeking PREA redress, (2) establish procedures for addressing inmate sexual assault complaints, or (3) prevent correction or medical officials from discriminating against inmates. Brown seeks monetary relief, a declaration that Administrative Directives 6.6 and 6.12 are unconstitutional, and an injunction ordering Semple to rewrite Administrative Directives 6.6 and 6.12. Because Brown is alleging that Semple's policies and/or customs, including Administrative Directives 6.6 and 6.12, caused him to suffer mental anguish and retaliation as a result of the sexual abuse and concealment thereof, I will construe his claim against Semple as one of supervisory liability for Eighth Amendment sexual abuse and First Amendment retaliation.

Brown's claims against Semple in his official capacity for monetary relief cannot proceed because those claims are barred by the Eleventh Amendment. "[T]he Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity. That is so because . . . a judgment against a public servant in his official capacity imposes liability on the entity that he represents." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citations omitted; footnote omitted; internal quotation marks omitted). *See also Quern v. Jordan*, 440 U.S. 332, 342 (1979). All such claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2). Turning to Brown's claims against Semple for declaratory and injunctive relief, it is unclear from the complaint whether Semple was aware of the acts committed by Coursen or the attempts by other officials to conceal or deter Brown's complaints. Nevertheless, "[p]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under

42 U.S.C. § 1983." *Davidson v. Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2011) (quoting

*Glass v. Coughlin*, 91 Civ. 193, 1991 WL 102619, *2 (S.D.N.Y. May 29, 1991)); *see also*

*Johnson*, 839 F. Supp. at 955-956. Thus, I will permit Brown's supervisory liability claims for

First and Eighth Amendment violations to proceed against Semple in his official capacity for

declaratory and injunctive relief only.

**ORDERS**

(1) Brown's Eighth Amendment sexual abuse claim and state law sexual assault

claim may proceed against Coursen in her individual capacity for damages. His Eighth

Amendment failure to protect claim may proceed against Zegerzewski, Santiago, Chaplin,

Berger, Paulsinski, Green, King, and Crabb in their individual capacities for damages. His First

Amendment retaliation claim may proceed against Chaplin, Berger, Ventrella, Cruz, and

Karabestos in their individual capacities for damages. The Eighth Amendment failure to protect

claim and the First Amendment retaliation claim may proceed against Semple in his official

capacity for declaratory and injunctive relief. Brown's PREA violation claim and deliberate

indifference to medical needs claims are DISMISSED.

(2) The Clerk shall verify the current work addresses for Coursen, Zegerzewski,

Santiago, Chaplin, Berger, Paulsinski, Green, King, Crabb, Ventrella, Cruz, and Karabestos with

the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing

the complaint to each defendant at the confirmed addresses within **twenty-one (21) days** of this

Order, and report to the court on the status of the waiver request on the **thirty-fifth (35) day**

**after mailing**. If any defendant fails to return the waiver request, the Clerk shall make

arrangements for in-person service by the U.S. Marshals Service on him or her, and the

defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3)     The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the complaint on Semple in his official capacity at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.


(4)     Semple, Coursen, Zegerzewski, Santiago, Chaplin, Berger, Paulsinski, Green, King, Crabb, Ventrella, Cruz, and Karabestos shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them**.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed **within six months (180 days) from the date of this order**.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed **within seven months (210 days) from the date of this order**.

SO ORDERED at Bridgeport, Connecticut this 13th day of September 2017.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill

14

United States District Judge